UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 24 Cr. _____ ( ____ ) |
| STEWART ROSENWASSER, and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," | **24 CRIM 555** |
| Defendants. | |

## **Overview**

1.      STEWART ROSENWASSER, the defendant, while serving as Chief Counsel to the District Attorney and Executive Assistant District Attorney of the Orange County District Attorney's Office (the "District Attorney's Office"), accepted at least approximately $63,000 in bribe payments from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant.  In exchange for the bribe payments, ROSENWASSER, using the authority of the District Attorney's Office, assisted and was influenced by SOUDANI to, among other things, investigate and prosecute two individuals ("Individual-1" and "Individual-2," and collectively, the "Individuals"), lead and prioritize the matter, improperly provide confidential information about the matter to SOUDANI, seize money from the Individuals that would be paid to SOUDANI as restitution, and repeatedly decline to recuse himself from the matter despite ROSENWASSER's conflict of interest.  To conceal his criminal conduct, ROSENWASSER lied about the nature of his relationship with SOUDANI to the senior leadership of the District Attorney's Office and others, made false statements on financial disclosure forms, and lied to federal agents.

2.     In or about late October 2022, STEWART ROSENWASSER, the defendant, using the authority of the District Attorney's Office, and at the request of MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, initiated a criminal investigation of the Individuals (the "Criminal Case") and promised SOUDANI in a text message that he would put "maximum effort" into the matter.[1]  The Individuals are both close relatives of SOUDANI's who previously resided with him in New York and moved to Colorado in or about mid-October 2022. On or about November 10, 2022, shortly after ROSENWASSER initiated the criminal investigation that SOUDANI had requested, SOUDANI paid ROSENWASSER approximately $15,000, by check—the first of many bribe payments ROSENWASSER accepted from SOUDANI.  On or about December 23, 2022, SOUDANI texted ROSENWASSER: "I give my word at the end you will be extremely more than happy."

3.     During the course of the Criminal Case, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, communicated regularly, including through text messages, phone calls, and in-person meetings. SOUDANI frequently asked ROSENWASSER for updates on the investigation, and ROSENWASSER provided SOUDANI with information about the investigation's progress, including confidential details that were inappropriate for a prosecutor to share with a complainant about the investigation and the Individuals.  For example, ROSENWASSER provided information to SOUDANI about Individual-1's location in Colorado, and he promised to show SOUDANI, at SOUDANI's request, law enforcement footage of the Individuals' forthcoming arrests (*i.e.*, body-worn camera footage), so that SOUDANI could "see [the Individuals] humiliated," among other

---

[1] The statements and communications described in this Indictment are set forth in substance and in part, unless otherwise indicated.  Typographical and other errors in quotations are reproduced as they appear in the original communications, unless otherwise indicated.

things. After taking the unusual step of personally traveling to Colorado for the Individuals'
arrests, ROSENWASSER provided contemporaneous updates to SOUDANI about the Individuals
and the execution of the search warrants. In addition, ROSENWASSER and SOUDANI took steps
to conceal their communications. For example, in or about January 2023, ROSENWASSER texted
SOUDANI: "I won't text anymore"; "Anything you want to tell me, call me. That's it."; and "I
will call you tomorrow. We must stop creating [text] messages. Period." On or about May 6,
2023, SOUDANI texted ROSENWASSER: "Number one my phone is clean everything that was
bad is turned off or completely completely taken out . . . ."

    4.    On or about March 8, 2023, STEWART ROSENWASSER, the defendant, charged
the Individuals by felony complaint with larceny, in violation of certain provisions of New York
Penal Law. After the Individuals were charged, in or about April 2023, attorneys for Individual-1
("Individual-1's Counsel") advised ROSENWASSER that he had a conflict of interest and should
recuse himself from the Criminal Case because ROSENWASSER had previously represented
MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, in private
practice, in or about the 1990s. Despite having accepted at least approximately $30,000 in bribe
payments from SOUDANI as of in or about April 2023, ROSENWASSER denied the existence
of a conflict, and declined to recuse himself from the Criminal Case. Instead, ROSENWASSER
told the leadership of the District Attorney's Office that he could not recall his prior representations
of SOUDANI. ROSENWASSER told one senior attorney, in substance and in part, that he used
to buy coffee and bagels from SOUDANI, and that was the extent of their relationship.
ROSENWASSER failed to disclose—to Individual-1's Counsel and/or the leadership of the
District Attorney's Office—his decades-long relationship with SOUDANI, his frequent
inappropriate communications with SOUDANI during the course of the Criminal Case, and his

acceptance of significant sums of money from SOUDANI during the course of the Criminal Case. Based on ROSENWASSER's false and misleading representations, the District Attorney's Office did not immediately remove ROSENWASSER from the Criminal Case.

5.    On or about May 10 and May 12, 2023, STEWART ROSENWASSER, the defendant, presented the case against Individual-2 to a grand jury and obtained an Indictment against Individual-2.  ROSENWASSER's grand jury presentation included testimony from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant.  On or about May 9 and May 11, 2023, SOUDANI gave ROSENWASSER approximately 10 money orders totaling approximately $10,000, which SOUDANI had purchased in cash.  At ROSENWASSER's direction, SOUDANI paid ROSENWASSER by money order rather than check in attempts to conceal the source of SOUDANI's payments to ROSENWASSER.

6.    In or about June 2023, STEWART ROSENWASSER, the defendant, was replaced on the Criminal Case by a senior executive of the District Attorney's Office ("Senior Executive-1").  In the fall of 2023, the District Attorney's Office moved to dismiss the case against Individual-1, and offered Individual-2 a plea agreement, which Individual-2 accepted.  On or about March 6, 2024, Individual-2 was sentenced to one to seven years' imprisonment.

7.    On or about January 5, 2024, the District Attorney's Office disbursed approximately $478,286.42 in restitution from the Criminal Case to MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant.  Three days later, on or about January 8, 2024, SOUDANI paid STEWART ROSENWASSER, the defendant, approximately $15,000 by check.  ROSENWASSER and SOUDANI continued their financial relationship through at least in or about May 2024.  As of in or about May 2024, SOUDANI had paid ROSENWASSER at least approximately $63,000 by check, money order, and cash.

**The Defendants**

8.     STEWART ROSENWASSER, the defendant, graduated from law school in or about 1977, and practiced law for approximately 47 years thereafter, including as an Assistant District Attorney at the District Attorney's Office, a private practitioner, a county court judge, and an Acting New York State Supreme Court Justice.  In or about 2019, ROSENWASSER returned to the District Attorney's Office as part of its executive staff, assuming the role of Executive Assistant District Attorney and Chief Counsel to the District Attorney.  ROSENWASSER's responsibilities included, among other things, authorizing charges by indictment and advising on ethics issues.  Given his leadership role at the District Attorney's Office, beginning in or about 2019, ROSENWASSER was the lead prosecutor on only a handful of select cases (*i.e.*, approximately two large cases other than the Criminal Case).

9.     MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, is a self-proclaimed millionaire and a former restaurant owner.  SOUDANI is Individual-1's brother, Individual-2's uncle, and the father of a third individual ("Individual-3").

10.     At all times relevant to this Indictment, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, had known each other for approximately 40 years, and ROSENWASSER had represented SOUDANI as a private attorney in or about the 1990s.  Through SOUDANI, ROSENWASSER had also known Individual-1 for decades.

**The District Attorney's Office**

11.     At all times relevant to this Indictment, STEWART ROSENWASSER, the defendant, was employed by the District Attorney's Office.  The District Attorney's Office is the local prosecuting office for Orange County, New York.  At all times relevant to this Indictment,

the District Attorney's Office received in excess of $10,000 in federal funds within a one-year period.

12.     Criminal prosecutors have special responsibilities and obligations as attorneys, officers of the court, and administrators of justice.  A prosecutor's ethical duties in New York derive from and are defined by many sources, including the New York Rules of Professional Conduct, the constitutions of the United States and the State of New York, statutes, case law, and local law and regulations.  Under Rule 1.11(f) of the New York Rules of Professional Conduct, "[a] lawyer who holds public office shall not . . . accept anything of value from any person when the lawyer knows or it is obvious that the offer is for the purpose of influencing the lawyer's action as a public official."

13.     Orange County requires its employees to submit a disclosure form, signed under penalty of perjury, listing all money, services, meals, loans, or items with a monetary value over $75 and received from the same donor.  Prosecutors at the District Attorney's Office, as Orange County employees, are prohibited from accepting or soliciting various benefits, including "money," "loans," and "meals" valued at over $75 within a 12-month period from any one person, or any "financial benefit under circumstances in which it could reasonably be inferred that the [benefit] was intended to influence" the prosecutor "in the performance of [his] official duties."

## The Bribery Scheme

### October to December 2022: Rosenwasser Initiates an Investigation of the Individuals and Accepts At Least $20,000 in Bribe Payments from Soudani

14.     On or about October 14, 2022, Individual-1, who had been residing with MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, left SOUDANI and New York with Individual-2 for Colorado.  After the Individuals left SOUDANI, on or about October 16, 2022, SOUDANI contacted a friend ("Witness-1").  SOUDANI told Witness-1, in

substance and in part, that the Individuals had stolen significant sums of cash and money saved in SOUDANI's financial account. SOUDANI also told Witness-1, in substance and in part, that he had previously loaned STEWART ROSENWASSER, the defendant, approximately $40,000, ROSENWASSER had never paid SOUDANI back, and ROSENWASSER would "take care of" SOUDANI's situation. SOUDANI later told an investigator ("Investigator-1") from a New York investigating agency (the "Investigating Agency") that, after meeting with Witness-1, SOUDANI tried to report the Individuals' alleged theft to the local police department, but was told that the matter was civil, not criminal.

15.    In or about late October 2022, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, began communicating. Between on or about October 26, 2022, and on or about November 3, 2022, ROSENWASSER, who was then employed as Executive Assistant District Attorney and Chief Counsel to the District Attorney at the District Attorney's Office, and SOUDANI exchanged multiple phone calls. On or about October 28, 2022, ROSENWASSER emailed Investigator-1 about a "Potential Case." In his email to Investigator-1, ROSENWASSER stated that he had been contacted by "Moutz Soudani (Marty) who advised [Individual-1] and [Individual-2] may have stolen an investment account (1.8 million) and over a half million dollars in cash. He [SOUDANI] has attempted to contact them [the Individuals] without success." On or about October 31, 2022, based on ROSENWASSER's request, the Investigating Agency opened an investigation.

16.    On or about November 4, 2022, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, texted STEWART ROSENWASSER, the defendant: "Hi please make sure when they get them [the Individuals] both have apple computer and telephone that will show you where they ever been specially him don't worry this text will be done the same

way not to worry[.]" A few hours later, ROSENWASSER texted SOUDANI: "There has been a crypto guy now assigned to the case. My investigator is meeting with him in Garden City next Tuesday. Hopefully I will be able to issue grand jury subpoenas next week." In response, SOUDANI texted ROSENWASSER: "Great i trust you fully you the only man who can[.]"

17.     On or about November 6, 2022, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, met with Witness-1, and stated about the Criminal Case: "the DA's on my side. . . . He's my friend. . . . So that's at least in good hands." SOUDANI also told Witness-1 that he knew that the Individuals were living in Colorado.

18.     During the course of the Criminal Case, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, communicated with one another on a regular basis, including through text messages, phone calls, and in-person meetings. From in or about November 2022 through in or about December 2022 alone, ROSENWASSER and SOUDANI exchanged at least approximately 200 text messages and at least approximately 26 phone calls. In their text messages, ROSENWASSER and SOUDANI planned in-person meetings at which no one else—such as a law enforcement officer assigned to the Criminal Case—would be present. In addition, SOUDANI frequently requested updates regarding the investigation, ROSENWASSER provided updates, including improper disclosures of confidential information about the investigation to SOUDANI, and ROSENWASSER asked SOUDANI about certain evidence. For example:

a.     On or about November 7, 2022, SOUDANI texted ROSENWASSER that he had deleted ROSENWASSER's prior text message and wanted the Individuals' address in Colorado. The next day, ROSENWASSER texted SOUDANI the Individuals' address in Colorado.

8

b.    On or about November 10, 2022, ROSENWASSER and SOUDANI scheduled to meet at a local diner.  That same day, ROSENWASSER deposited a check from SOUDANI, dated November 10, 2022, in the amount of $15,000, with "Loan" written in the memo line (redactions added):



c.    On or about November 18, 2022, ROSENWASSER and SOUDANI exchanged the following text messages, among others:

| SOUDANI | Any progress iam anxious thanks |
|---|---|
| ROSENWASSER | Waiting to talk to investigator. Should know something today. |
| SOUDANI | I recently learned that he told the wedding party in the suite that he is a millionaire my grandson told me that |
| ROSENWASSER | He is. With your money. |
| SOUDANI | Are you able to freeze the accounts when you know where the money is yes or no |
| ROSENWASSER | We will be able to |
| ROSENWASSER | Believe me. I'm putting maximum effort into this. We will utilize all available assets. |

d.    On or about November 22, 2022, SOUDANI texted ROSENWASSER: "Any progress[?]"  ROSENWASSER responded, "Subpoenas are out[.]"

e.    On or about December 23, 2022, SOUDANI and ROSENWASSER exchanged the following text messages, among others:

| SOUDANI | Hi and happy holidays i wish you and your family the best of the best by the way any thing with the wallets |
| ROSENWASSER | I will speak to you this weekend. We have body cam video of [Individual-2's prior] arrest. Full layout of house etc. all good for the search warrant. |
| ROSENWASSER | I'm going to go into grand jury as soon as I receive your certified bank records. I have arranged an audit of all the electronic transfers. |
| ROSENWASSER | I am planning on going to Colorado for the search and to interview. I think when [Individual-1] sees me, it's over. |
| SOUDANI | You are 100% right and i give my word at the end you will be extremely more than happy god bless you you the only man who could do this |
| SOUDANI | Please I have to meet with you whereever you say for five minutes before you leave to Colorado thanks |

f.    On or about December 26, 2022, ROSENWASSER and SOUDANI exchanged text messages about an in-person meeting. On or about December 27, 2022, ROSENWASSER deposited a check from SOUDANI, dated December 25, 2022, in the amount of $5,000, with "Loan" written in the memo line (redactions added):



***January to February 2023: Rosenwasser Prepares to Arrest the Individuals and Accepts At Least $5,000 in Bribe Payments from Soudani***

19.    From in or about January 2023 through February 2023, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, continued to communicate by text messages, phone calls, and in-person meetings about, among other things, the Criminal Case, the Individuals, their mode of communication,

ROSENWASSER's "protect[ion]" of SOUDANI, and SOUDANI's access to money. For example:

a.    On or about January 6, 2023, after communicating about an in-person meeting at a local diner, SOUDANI texted ROSENWASSER: "You could do what you did today anytime your soothing voice and the half smile that always on your face i need that badly for the future i do have [Individual-1's] actual accounting papers for the safe. . . love you you the man [emoji]." ROSENWASSER responded: "We'll get there."

b.    On or about January 9, 2023, after SOUDANI texted ROSENWASSER about a conversation he had with Individual-2's attorney in a different matter, ROSENWASSER texted SOUDANI: "I won't text anymore" and "Anything you want to tell me, call. That's it."

20.    On or about January 19, 2023, STEWART ROSENWASSER, the defendant, arranged for MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, to meet with an investigator at the District Attorney's Office ("Investigator-2") so that Investigator-2 could, among other things, extract communications between SOUDANI and the Individuals from SOUDANI's cellphone. With SOUDANI's consent, Investigator-2 created a forensic image of SOUDANI's cellphone and returned SOUDANI's cellphone to SOUDANI.

21.    On or about January 20, 2023, after his cellphone had been imaged by Investigator-2 and returned to him, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, exchanged the following text messages with STEWART ROSENWASSER, the defendant:

| SOUDANI | Iam thinking about you how you handle things you not just smart you are a genius and tuff as nails with your calm voice and that smile on your face you could go through steel i honestly new that about you but you have surpassed my expectations by far and the most genius thing you doing is you going to [city in Colorado] personally i would never thought of that you leaving no chance to any wholes or mistakes you are in full control of |

| | |
|---|---|
| | things i have nothing but love [heart emoji] and respect for you iam very smart guy with an accent but you are impressing the hell out of me and i really know in the bottom of your heart you also protecting me you don't want any harm to come to me just in case even though we both know iam clean as a whistle you know me for 40 years and iam still working iam a money machine loyalty to both of us comes before religion this the first time i ever put someone else next to me when comes to loyalty and between us [Individual-2's attorney] can't shine your shoes on his best days but i just happened that i love the guy like son i always did i spoke to you to day from the heart i love you please don't get mad i had to say what i said because this is who iam its hard to change |
| ROSENWASSER | Thank for that |
| ROSENWASSER | I will always protect you. |
| ROSENWASSER | And help you |

22.    On or about January 23, 2023, STEWART ROSENWASSER, the defendant, directed MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, to meet with Investigator-1 for an interview. Investigator-1 met with SOUDANI and memorialized SOUDANI's statements. This was the first time Investigator-1 had met SOUDANI, despite ROSENWASSER's initiation of the investigation at SOUDANI's request nearly three months earlier. After Investigator-1's interview of SOUDANI, SOUDANI and ROSENWASSER exchanged the following messages, among others:

| | |
|---|---|
| SOUDANI | So he has two accounts out side the country so what [Individual-2] thinks now if the account are large enough so it pays for him to take of and call it a day so as i think you have to freeze his passport so he can't leave the country also you have to complicate his mother so he will know it's not only him but his mother they come out together or drawn together now the only way to get to those accounts is through him or his computer so the charges has to scare the shit out of him you to solve this problem through him even though the FBI is going to be involved but the best way to solve the problem is through him when you arrest him what are the countries that we talking about i know you already ahead of me the guy said there is no better man than you for this job |
| ROSENWASSER | I will call you tomorrow. We must stop creating test messages. Period. |

23.    On or about February 9, 2023, STEWART ROSENWASSER, the defendant, texted MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant: "I'm almost

ready to go to grand jury." SOUDANI responded: "I thought [so] that is why iam leaving you alone you are usually ahead of me. . . . God bless you." A few days later, on or about February 13, 2023, ROSENWASSER deposited a check from SOUDANI, dated February 13, 2023, in the amount of $5,000, with "Loan" written in the memo line (redactions added):



24. On or about February 24, 2023, STEWART ROSENWASSER, the defendant, swore to two affidavits requesting search warrants for a vehicle and the apartment where Individual-1 was staying in Colorado (the "Apartment"). The search warrant affidavits did not disclose ROSENWASSER's relationship with MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, or the payments ROSENWASSER had accepted from SOUDANI.

### March 2023: Rosenwasser Charges the Individuals and Travels to Colorado for Their Arrests, and Soudani Sends Threats

25. In or about March 2023, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, exchanged approximately 28 phone calls and at least approximately 63 text messages about meeting in-person, the Individuals and their arrests, the Individuals' statements to law enforcement, body camera footage of the arrests, and cash seized pursuant to search warrants.

26.    On or about March 8, 2023, STEWART ROSENWASSER, the defendant, using the authority of the District Attorney's Office, charged by complaint: (a) Individual-1 with grand larceny in the second degree, in violation of New York Penal Law § 155.40(1), for allegedly stealing $350,000 from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant; and (ii) Individual-2 with grand larceny in the first degree, in violation of New York Penal Law § 155.42, for allegedly stealing $1,620,506.50 from SOUDANI.    Based on the complaints, arrest warrants were obtained for the Individuals.

27.    On or about March 7, 2023, the day before the Individuals were arrested in Colorado, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, exchanged the following messages, among others:

| | |
|---|---|
| SOUDANI | I wish you will have some recordings for the arrest I want to see them [the Individuals] humiliated specially him bye the way I went to the good well church I made a prayer for you and let a candle the best of luck as I told you I can't sleep my stomach is full of butterflies |
| ROSENWASSER | You will be able to see body camera footage. |
| SOUDANI | Yes please |

28.    STEWART ROSENWASSER, the defendant, traveled from New York to Colorado so that he could be present for the Individuals' arrests and the execution of search warrants on or about March 8, 2023, even though such travel by prosecutors at the District Attorney's Office is uncommon.  ROSENWASSER was present at the Apartment at or about the time it was searched, and for an extended interaction with Individual-1 in the hallway outside of the Apartment.  As captured on body worn camera footage, Individual-1 and ROSENWASSER had the following exchange outside of the Apartment, in part:

Individual-1:       Really?  Rosenwasser?  Me?  Shame on you.  Why are you coming after me? . . . Shame on you.  I'm your friend.  I made you food . . . .

| | |
|---|---|
| ROSENWASSER: | Tabouleh . . . . |
| Individual-1: | You know why I left? I was getting beat up every single day. You want the truth? . . . |
| ROSENWASSER: | [Individual-1], you need to help yourself and calm down. . . . |
| Individual-1: | After 45 years of abuse. Shame on you. Only one sided. Because everybody is bought. Shame on you. . . . It's nice to know people in high places. He always gets away with everything. Shame on you. Shame on all of you . . . and this is what I get. |
| ROSENWASSER: | I'm not too high. |

29.     On or about the morning of March 8, 2023, the day of the Individuals' arrests, STEWART ROSENWASSER, the defendant, communicated with MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, by phone multiple times. ROSENWASSER and SOUDANI also exchanged text messages on the day of, and the days following, the arrests. For example:

    a.      On or about March 8, 2023, ROSENWASSER and SOUDANI exchanged the following text messages, among others, reflecting ROSENWASSER's provision of contemporaneous updates to SOUDANI on the day of the Individuals' arrests:

| | |
|---|---|
| SOUDANI | Are they yes or no i want ask any more question just yes or no |
| ROSENWASSER | Yes. Were here |
| ROSENWASSER | [Individual-1] said [Individual-1] wants a lawyer. |
| SOUDANI | You know what to do you have to find the cash before you leave so there is no money to pay a lawyer . . . |
| SOUDANI | [Individual-1] is tough but [Individual-2] will brake her |

    .   .   .

| | |
|---|---|
| SOUDANI | How much total the money you found |
| ROSENWASSER | Don't know yet. We'll talk on phone. Not crazy about texting. |

b.    The day after the arrests, on or about March 9, 2023, ROSENWASSER and SOUDANI exchanged the following text messages:

| SOUDANI | Not even a phone call you are killing me |
|---|---|
| ROSENWASSER | I'll. It will be good |
| SOUDANI | Iam continuously praying for you god bless every thing about you |
| ROSENWASSER | I'll speak to you when I get to airport |
| ROSENWASSER | Sitting outside [Individual-3's (*i.e.*, SOUDANI's son's)] house right now. |
| SOUDANI | God bless you don't miss a trick |
| SOUDANI | [Individual-3] is scum bag do not leave [city in Colorado] before you you get all the money you can otherwise it will be completely gone as i told you he is a Sicilian that why i asked you to read the letter i wrote him |
| SOUDANI | If they have no money you cripple them all from all sides |
| ROSENWASSER | They are both in jail |
| SOUDANI | What about [Individual-3] |
| ROSENWASSER | He wasn't home. |
| SOUDANI | Does he have any of the money |

c.    On or about March 10, 2023, ROSENWASSER texted SOUDANI that he had returned home from Colorado early that morning, and he would "come by this weekend for [a] full report."

d.    On or about March 13, 2023, SOUDANI texted ROSENWASSER about the substance of Individual-2's post-arrest statements to law enforcement. SOUDANI also told ROSENWASSER, when discussing where the allegedly stolen money was, that if ROSENWASSER did not "press hard," "we never see that money," and told ROSENWASSER to "think of something."

30.    On or about March 8, 2023, the day that STEWART ROSENWASSER, the defendant, was in Colorado to arrest the Individuals, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, texted an image of a typed letter ("Soudani Threats-1") to Individual-3. Individual-3 had permitted Individual-1 to stay at Individual-3's apartment in

Colorado (*i.e.*, the Apartment), and Individual-3 lived in another residence close to the Individuals in Colorado. In the letter, SOUDANI stated the following:

> For your information, I had [Individual-1] and [Individual-2's] address the day that they moved in. I saw 3 body cameras of the apartment and I saw the mattress that [Individual-2] slipped on. . . . [Y]ou take [Individual-2] in to Colorado, help [Individual-2] and give [Individual-2] an apartment. You've been trying to become my enemy for over 30 years. You just succeeded. We are officially enemies. . . .
>
> If I ever hear that you have swindled [the Individuals] out of one penny, I will finish you. You will be charged with the same charges as [the Individuals] are being charged with. You have no idea how far I could reach. I am very stupid with technology and computers, but I am brilliant with everything else. You should know that. . . .
>
> Fuck you.
>
> P.S. Let [Individual-1] know that the grass isn't always greener on the other side.
>
> Yours truly,
> Marty Sr.

31.    On or about March 9, 2023, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, texted STEWART ROSENWASSER, the defendant, referencing the "letter" SOUDANI had written to Individual-3 (*i.e.*, Soudani Threats-1), which SOUDANI had "asked [ROSENWASSER] to read."

### March 2023: Individual-1's Counsel Reports to Rosenwasser that Soudani Abused Individual-1 and Soudani Continues to Send Threats Intended for Individual-1

32.    On or about March 16, 2023, STEWART ROSENWASSER, the defendant, emailed counsel for Individual-1 (*i.e.*, Individual-1's Counsel), indicating that he planned to "present the case to the grand jury by the end of the week."

33.    On or about March 20, 2023, Individual-1's Counsel advised STEWART ROSENWASSER, the defendant, that Individual-1 was a victim of years-long abuse committed

by MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, which "raises serious questions" about SOUDANI's credibility that "should be resolved before Grand Jury action is taken." In response, on or about April 3, 2023, ROSENWASSER indicated that he saw "little purpose" in proceeding with a proffer session of Individual-1 regarding Individual-1's disclosure of SOUDANI's abuse if the "sole purpose of the proffer is to present 'cross-complaints against [SOUDANI]," and that the "circumstances and timing of the 'outcry' gives me pause."

34.    On or about March 27, 2023, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, sent an image of a typed letter ("Soudani Threats-2") by text message to Individual-3, which references STEWART ROSENWASSER, the defendant. In the letter, SOUDANI stated the following:

> If you love [Individual-1], give [Individual-1] fucking advice. . . . Take my word for it, [Individual-1] is looking at 10 years, [Individual-2] is looking at 25. Now please hear me out clearly. As far as I am concerned, I am completely done with [Individual-2]. Everything [Individual-2] has, I have. Computer, phone, papers, etc. . . . Now let me explain to you some facts about this case, please pay attention closely. The more [Individual-1] fights me and opens [Individual-1's] big mouth, the more I will be punishing [Individual-2] like you have never seen before.

> NOW – this case is very unique, let me tell you why. Usually the police make the arrest and bring the charges and the prosecutor would follow through with the charges. This case is different, the DA [ROSENWASSER] started the investigation, will make the charges and will prosecute the case. From what I know, he has never lost a case in his career. Also you should know, the bus stops here at the DA's office. Nothing will happen unless he wants it to happen. So far, all the bad mouthing from [Individual-1] and [Individual-2] has reached me. I know every word they have said and trust me it doesn't mean shit. It is all hearsay. . . .

> Do not forget, every paper in that apartment we have in our possession. In [Individual-1's] handwriting, she wrote down what money was in the safe. For example, uncirculated bills that were found in [Individual-1's] apartment. Also [Individual-2] already confessed on tape that [Individual-2] lost all the money, which we all know to be a lie. . . . We have two of the strongest cases ever, believe me. . . .

As I said I am completely done with [Individual-2], all the rest is up to [Individual-1]. I could completely destroy [Individual-1's] [benefits] case and put [Individual-1's] name overseas to ruins.   That would be accomplished without me doing so myself.  When they both come to New York, there is going to be a huge press conference.  This is the biggest case ever around here as it has to do with Coinbase.  Every agency, state and federal is watching it.  All I would have to tell people is to Google their names and read what they see.  Do not fuck with me.

### April 2023: Individual-1's Counsel Raises Rosenwasser's Conflict of Interest and Rosenwasser Accepts At Least $5,000 in Bribe Payments From Soudani

35.       Beginning in or about April 2023, Individual-1's Counsel repeatedly advised STEWART ROSENWASSER, the defendant, that ROSENWASSER's prosecution of the Individuals presented a conflict of interest because of his relationship with MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant.  At that time, Individual-1's Counsel was not aware of the payments from SOUDANI to ROSENWASSER during the pendency of the Criminal Case, in part because of the steps that ROSENWASSER and SOUDANI took to conceal their criminal conduct.    Despite the concerns expressed by Individual-1's Counsel, ROSENWASSER repeatedly declined to recuse himself.  For example:

a.       On or about April 5, 2023, Individual-1's Counsel, by letter, stated that "[ROSENWASSER'S] relationship to this family creates at least the appearance of a conflict" and that "[t]he positions you are taking in this case [are] unusual."

b.       In response, on or about April 6, 2023, ROSENWASSER emailed Individual-1's Counsel: "Finally, as I indicated to you during our first phone conversation, I do not recall a single instance that I served as Moutz Soudani's personal attorney and would not even describe my relationship with the Soudani family as social."  As of on or about April 6, 2023, ROSENWASSER had accepted at least $25,000 in checks from SOUDANI.  At no time did

ROSENWASSER disclose those payments to Individual-1's Counsel or the District Attorney's Office.

c.      On or about April 10, 2023, Individual-1's Counsel emailed ROSENWASSER: "With respect to your representation of Mr. Soudani, we have attached a screen shot from the unified court system records that show that you represented the complainant in a civil matter. We understand that you may have also represented Mr. Soudani and his son on a burglary charge in the same period."

d.      In response, on or about April 10, 2023, ROSENWASSER emailed Individual-1's Counsel: "I guess I didn't remember that case with Mr. Soudani 32 years ago. In any event, if this is going to be an issue, I would like to deal with it now."

36.    Between on or about April 10 and April 14, 2023, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, spoke by phone multiple times. On or about April 14, 2023, ROSENWASSER deposited a check from SOUDANI, dated April 14, 2023, in the amount of $5,000, with "Loan" written in the memo line (redactions added):



37.    On or about April 14, 2023, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, sent text messages to Individual-3 ("Soudani Threats-3"), with a

message to "tell [Individual-1] not to ask a lawyer to call anyone they call my accountant[.] I know everything they're doing in details I never lost the case. Also the DA."

38.    On or about April 16, 2023, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, sent a series of text messages to Individual-3 ("Soudani Threats-4"), with messages for Individual-1. In Soudani Threats-4, SOUDANI stated the following:

> I hope you rot why all this viciousness . . . . You and your son a psychopath playing the victim. . . . swear to God I wanna fucking choke you with my own hands you deserve a fucking beating like you never had before . . . . you're a fucking hypocrite, liar hypocrite, vicious mean sneaky fuck I swear to God, the more you fuck with me, the more I will destroy your son completely I fucking hate you. . . .

> Motherfucker, I swear to you I'm a going to get you and him one way, or another as it's a promise come clean your bitch you have to[.]

39.    Individual-1's Counsel continued to raise the conflict-of-interest issue with STEWART ROSENWASSER, the defendant, because of ROSENWASSER's relationship with MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant. At this time, Individual-1's Counsel was still unaware of SOUDANI's payments to ROSENWASSER during the Criminal Case, in part because of the steps that ROSENWASSER and SOUDANI took to conceal their criminal conduct. Individual-1's Counsel's communications with ROSENWASSER included, for example:

a.    On or about April 17, 2023, at approximately 2:07 p.m., Individual-1's Counsel sent by email a letter to ROSENWASSER, stating the following:

> With respect to recusal: we agree that recusal should be dealt with sooner than later. Our position is that your representation of the People here presents at least the appearance of impropriety. Accordingly, you should recuse yourself from the matter and the Office should wall you off from its continuance.

> You first advised that you had never represented Mr. Soudani. When presented with evidence that you had in fact represented Mr. Soudani, you

21

stated in subtance that you did not remember a case from "32 years ago"
. . . .

Our limited research to date now shows us that you unquestionably handled at least ten separate real estate transactions involving the Soudani family during the period from October 1990 until November 1991, including the filing of some 19 different documents. To be clear, it appears that you represented both Moutz Soudani and our client for purposes of these transactions. The relevant records are attached. Even if you do not remember your work on these matters, there can be no question that Moutz Soudani would have remembered it. And, as we have advised you, [Individual-1] remembers and is very uncomfortable with you in the case.

To be clear, although you denied having one, we have not alleged that you had a "social" relationship with the Soudanis. We are, however, informed that you visited [Soudani's prior residence] during the period that you served as a judge. And, as mentioned previously, it is our understanding that you may have represented both Mr. Soudani and his son [Individual-3] on a criminal matter involving an alleged burglary.

Approximately two hours later, at approximately 4:44 p.m., ROSENWASSER called SOUDANI, with the call lasting for over four minutes.

      b.     In response to Individual-1's Counsel's letter, on or about April 18, 2023, at approximately 10:44 a.m., ROSENWASSER emailed Individual-1's Counsel the following:

I acknowledge receipt of your letter of April 17, 2023, and attached list of real estate matters from 1990 and 1992. I will not take the liberty of responding to your concerns but will rather distribute the letter and enclosure to the District Attorney and members of the executive staff for their review and consideration. I will, of course provide any information requested of me in reaching a decision on your request for my recusal.

      c.     At approximately 11:15 a.m., on or about April 18, 2023, ROSENWASSER emailed six employees of the District Attorney's Office and the District Attorney, with the email subject line: "People v [Individual-1] Recusal Request." ROSENWASSER's email attached Individual-1's Counsel's April 17 letter and stated the following:

This is the companion case to the Grand Larceny 1 involving cryptocurrency charged against this defendant's son. From the beginning the lawyer has been maneuvering to make a recusal request

and I even encouraged him to do so. As you can see from the attachments, he has invested time and money to search for a basis to conflict me off the case. I think there is also a case from 1988. I have no recollection of any of these matters.

I felt it best if we reviewed this together so a response can be crafted. I am available as your schedules permit.

On or about April 19, 2023, ROSENWASSER forwarded the above internal email to Senior Executive-1, who was one of ROSENWASSER's supervisors. Between on or about April 20 and on or about April 26, 2023, ROSENWASSER communicated by phone multiple times with senior leadership at the District Attorney's Office, including with Senior Executive-1.

        d.     On or about April 25, 2023, in response to an email from Individual-1's Counsel about the "assigned ADA," ROSENWASSER wrote: "I anticipate a resolution this week on your recusal request."

        40.     From in or about late April 2023 through in or about May 2023, STEWART ROSENWASSER, the defendant, declined to recuse himself from the Criminal Case, and failed to make any disclosures about his relationship with MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, to the leadership of the District Attorney's Office, Individual-1's Counsel, and counsel for Individual-2 ("Individual-2's Counsel"), despite ROSENWASSER having accepted at least approximately $30,000 from SOUDANI as of in or about May 2023. Instead, ROSENWASSER lied to and misled the leadership of the District Attorney's Office by indicating, in sum and substance, that there was no conflict of interest, Individual-1's Counsel raised a frivolous claim, he did not recall his representation of SOUDANI while in private practice, and he only knew SOUDANI because he had purchased coffee and bagels from SOUDANI on occasion.

### *May 2023: Rosenwasser Proceeds to Grand Jury and*
### *Accepts At Least $10,000 in Bribe Payments From Soudani*

41.    On or about May 3, 2023, STEWART ROSENWASSER, the defendant, texted MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, about scheduling a meeting.

42.    On or about May 6, 2023, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, advised STEWART ROSENWASSER, the defendant, that he had deleted (*i.e.*, "clean[ed]" and "taken out") communications about their scheme (*i.e.*, "everything that was bad"), but he had to text ROSENWASSER because ROSENWASSER was not picking up his phone and SOUDANI needed to reach him.    Specifically, SOUDANI texted ROSENWASSER the following:

> Number one my phone is clean everything that was bad is turned off or completely completely taken out when i call you it's going to voicemail i have no other way to contact you except with text i don't know what you doing i want to start my day i have things to do please answer me

43.    On or about May 8, 2023, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, sent Individual-1's Counsel a letter by U.S. mail ("Soudani Threats-5"). In the letter, SOUDANI stated the following about Individual-1, among other things:

> I also want you to know, the more these hard times are extended and [Individual-1] lies about me, the more I will hurt [Individual-1's] son for [Individual-1]. . . . Don't forget I am a 74 year old man who has been living in upstate New York for 40 years. Everyone idolizes me and respects me to the fullest.

To the letter, SOUDANI attached, among other things, various photographs of himself, Individual-1, bundles of cash, and articles about SOUDANI's former restaurant.

44.    On or about May 10 and May 12, 2023, STEWART ROSENWASSER, the defendant, having still failed to recuse himself from the Criminal Case and disclose his relationship

with MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, to the District Attorney's Office, presented evidence to a grand jury, including the testimony of SOUDANI. ROSENWASSER obtained an Indictment from the grand jury charging Individual-2 with grand larceny in the first degree, in violation of New York Penal Law § 155.42; money laundering, in violation of New York Penal Law § 470.20(1); and four counts of forgery in the second degree, in violation of New York Penal Law § 170.10(1).

45.     On or about May 9 and May 11, 2023, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, purchased with cash approximately 10 money orders from post office locations in Montgomery, New York, and Plattekill, New York, totaling approximately $10,000.

a.      On or about May 15, 2023, STEWART ROSENWASSER, the defendant, deposited three of the money orders, totaling approximately $3,000, depicted below (redactions added):

 



b.      On or about May 24, 2023, ROSENWASSER deposited two of the money

orders, totaling approximately $2,000, depicted below (redactions added):



c.      The remaining five money orders, totaling approximately $5,000, were

made payable to a law firm from "Stewart Rosenwasser," as depicted below (redactions added):

 

 



46.     On or about June 18, 2024, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, admitted to law enforcement agents, in substance and in part, that STEWART ROSENWASSER, the defendant, directed SOUDANI to pay him by money order and cash, rather than check, so that the money could not be easily traced back to SOUDANI.

### *June 2023: Rosenwasser Is Removed from the Criminal Case*

47.     As of in or about mid-June 2023, the District Attorney's Office had not formally concluded that the prosecution of the Criminal Case by STEWART ROSENWASSER, the defendant, presented a conflict of interest or an appearance of a conflict of interest, but Senior Executive-1 removed ROSENWASSER from, and replaced him on, the Criminal Case. ROSENWASSER still remained copied on some emails relating to the Criminal Case and provided information about the investigation to Senior Executive-1.  At that time, Senior Executive-1 was not aware of the payments from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, to ROSENWASSER during the pendency of the Criminal Case.

48.     On or about June 12, 2023, Individual-1's Counsel received a letter by U.S. mail from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant ("Soudani Threats-6," and together with Soudani Threats-1 through -5, the "Soudani Threats").  In the letter, SOUDANI stated the following about Individual-1, among other things:

> I was going to tell you [Individual-1] could go to hell, and I will see you in court.  But, this is not who I am. . . .
>
> I do not know how much money [Individual-1] had when leaving the house because I do not ask those questions, nor do I care. . . .
>
> When you sent me the first letter, [Individual-1's] punishment was that I told you about her history and who [Individual-1] is . . . . How am I going to punish [Individual-1] for the second letter to me?  So far, I didn't say one bad word about [Individual-1] or her son or do anything to harm them.  I am never the aggressor. . . .

So far I won thirteen cases, never losing one. [Individual-1's] son was arrested in New Paltz . . . . I dismissed that case. . . . [Individual-1's] son was also arrested in LA twice. . . . I got involved and the DA refused to take both cases, making them also dismissed. . . .

The next lie, whatever it may be, I will punish again. I will not be the aggressor.

49.     Between on or about July 6 and July 11, 2023, despite having been removed from the Criminal Case, STEWART ROSENWASSER, the defendant, attempted to gain access to evidence from the Criminal Case, including the contents of Individual-1's cellphone. Senior Executive-1 and Investigator-2 discussed ROSENWASSER's requests for certain communications, and, per Senior Executive-1's directions, Investigator-2 did not give ROSENWASSER the communications he requested.

50.     On or about July 13, 2023, Individual-2, who had been transported from Colorado to New York, was arraigned in state court in Orange County. On or about July 14, 2023, the District Attorney's Office announced by press release the charges against Individual-2.

51.     On or about September 14, 2023, STEWART ROSENWASSER, the defendant, deposited a check from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, dated September 13, 2023, in the amount of $3,100. The memo line was left blank (redactions added):



52.     In or about September 2023, the District Attorney's Office declined to proceed to grand jury with respect to the charge against Individual-1, which was based primarily on one witness: MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant. The District Attorney's Office determined, in substance and in part, that there was insufficient evidence with respect to SOUDANI's allegation that Individual-1 stole cash that belonged to SOUDANI.

53.     On or about September 18, 2023, upon the motion of the District Attorney's Office, submitted by Senior Executive-1, a County Judge: (a) dismissed the felony charge against Individual-1; (ii) reduced the felony charge to a charge of petit larceny, a Class A misdemeanor, in violation of New York Penal Law § 155.25; and (iii) dismissed the misdemeanor charge of petit larceny in light of a plea agreement between Individual-1 and the District Attorney's Office.

54.     On or about November 28, 2023, Individual-2 pleaded guilty, pursuant to a plea agreement with the District Attorney's Office, to grand larceny in the third degree, in violation of New York Penal Law § 155.35(1).

### *January 2024 to May 2024: Soudani Receives Restitution in the Criminal Case and Rosenwasser Accepts At Least $15,000 in Bribe Payments From Soudani*

55.     On or about January 5, 2024, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, received restitution from the District Attorney's Office in connection with the Criminal Case, by check, in the amount of approximately $478,286.42.

56.     On or about January 7 and January 8, 2024, STEWART ROSENWASSER, the defendant, called MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, approximately seven times.

57.     On or about January 9, 2024, STEWART ROSENWASSER, the defendant, deposited a check from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the

defendant, dated January 8, 2024, in the amount of $15,000, with "Loan" written in the memo line (redactions added):



58.    On or about March 6, 2024, Individual-2 was sentenced to an indeterminate sentence of one to seven years' imprisonment.

59.    STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, continued their financial relationship through at least in or about May 2024.  As of in or about May 2024, SOUDANI had paid ROSENWASSER at least approximately $63,000 in bribes by check, money order, and cash.

***2023 and 2024: Rosenwasser Submits False County Financial Disclosure Forms***

60.    On or about May 9, 2023, and on or about February 20, 2024, STEWART ROSENWASSER, the defendant, submitted financial disclosure forms to Orange County, under penalty of perjury, falsely listing no receipt of money, loans, or meals valued at over $75 from the same person during the prior year.  In truth and in fact, ROSENWASSER solicited and accepted a total of approximately $63,000—far more than $75—from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, in the calendar years 2022, 2023, and 2024.

*June 2024: Rosenwasser Makes False Statements to Federal Law Enforcement Agents*

61.     On or about June 18, 2024, STEWART ROSENWASSER, the defendant, participated in a voluntary interview with law enforcement agents with the Federal Bureau of Investigation ("FBI"). During the interview, ROSENWASSER claimed that the District Attorney and Senior Executive-1 were aware that ROSENWASSER knew Individual-1, and they indicated that it would be beneficial for ROSENWASSER to travel to Colorado for the execution of arrest and search warrants so that Individual-1 would see "a familiar face" and potentially participate in an interview. In truth and in fact, neither the District Attorney nor Senior Executive-1 were aware of ROSENWASSER's relationship with Individual-1 prior to his travel to Colorado because ROSENWASSER had failed to disclose the relationship. Accordingly, neither the District Attorney nor Senior Executive-1 told ROSENWASSER they believed that it would benefit the case for ROSENWASSER to participate in the execution of arrest and search warrants for an individual with whom he had a personal relationship.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Conspiracy to Commit Bribery)
### (As to STEWART ROSENWASSER and MOUT'Z SOUDANI)

The Grand Jury charges:

62.     The allegations contained in paragraphs 1 through 61 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

63.     From at least in or about October 2022 through at least in or about May 2024, in the Southern District of New York and elsewhere, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and

with each other to commit offenses against the United States, to wit, bribery, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 666(a)(2).

64.    It was a part and object of the conspiracy that STEWART ROSENWASSER, the defendant, being an agent of a local government, and an agency thereof, to wit, the District Attorney's Office, which received, in each of the calendar years 2022 through 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, would and did corruptly solicit and demand for the benefit of a person, and accept and agree to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the District Attorney's Office involving a thing of value of $5,000 and more, in violation of Title 18, United States Code, Section 666(a)(1)(B), to wit, ROSENWASSER, while employed as an Executive Assistant District Attorney of the District Attorney's Office and Chief Counsel to the District Attorney, accepted and agreed to accept payments from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, totaling at least approximately $63,000, in exchange for, among other things, investigating and prosecuting the Individuals, providing confidential information about the investigation to SOUDANI, and seizing money that was then paid to SOUDANI as restitution.

65.    It was further a part and object of the conspiracy that MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, would and did corruptly give, offer, and agree to give a thing of value to a person, with intent to influence and reward an agent of a local government, and an agency thereof, to wit, the District Attorney's Office, which received, in each of the calendar years 2022 through 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal

assistance, in connection with business, a transaction, and a series of transactions of the District Attorney's Office involving a thing of value of $5,000 and more, in violation of Title 18, United States Code, Section 666(a)(2), to wit, SOUDANI agreed to pay and paid STEWART ROSENWASSER, the defendant, who was the Executive Assistant District Attorney of the District Attorney's Office and Chief Counsel to the District Attorney, at least approximately $63,000, in exchange for, among other things, ROSENWASSER investigating and prosecuting the Individuals, providing confidential information about the investigation, and seizing money that was then paid to SOUDANI as restitution.

Overt Acts

66.     In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed by STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, in the Southern District of New York and elsewhere:

a.      On or about October 28, 2022, using the authority of the District Attorney's Office, and at SOUDANI's request, ROSENWASSER opened an investigation of the Individuals and both led and prioritized the investigation in the months to follow.

b.      On or about November 8, 2022, ROSENWASSER texted SOUDANI confidential information about Individual-1, including Individual-1's address in Colorado (*i.e.*, the Apartment).

c.      On or about November 10, 2022, SOUDANI paid, and ROSENWASSER accepted and deposited, a check in the amount of $15,000, dated November 10, 2022, with the word "Loan" written in the memo line.

d.    On or about December 23, 2022, ROSENWASSER shared confidential information about the investigation with SOUDANI, including information about the Apartment, the timing of his grand jury presentation, evidence, and ROSENWASSER's plan to travel to Colorado to execute arrest and search warrants and attempt to interview Individual-1.

e.    On or about December 25, 2022, SOUDANI paid ROSENWASSER a check in the amount of $5,000, dated December 25, 2022, with the word "Loan" written in the memo line, which ROSENWASSER accepted and deposited on or about December 27, 2022.

f.    On or about January 23, 2023, ROSENWASSER texted SOUDANI, cautioning him to conceal their scheme: "I will call you tomorrow.  We must stop creating text messages.  Period."

g.    On or about February 13, 2023, SOUDANI paid, and ROSENWASSER accepted and deposited, a check in the amount of $5,000, dated February 13, 2023, with the word "Loan" written in the memo line.

h.    On or about February 24, 2023, ROSENWASSER swore to two affidavits requesting search warrants for a vehicle and the apartment where Individual-1 was staying (*i.e.*, the Apartment").

i.    On or about March 7, 2023, SOUDANI asked for recordings of the Individuals' arrests so that he could see them "humiliated," and ROSENWASSER agreed to provide body camera footage to SOUDANI.

j.    On or about March 8, 2023, ROSENWASSER charged Individual-1 and Individual-2 by felony complaint with larceny, in violation of certain provisions of New York Penal Law, ROSENWASSER traveled to Colorado for the Individuals' arrests and the execution

34

of search warrants, and SOUDANI requested, and ROSENWASSER provided, updates regarding the Individuals' arrests, statements, and the execution of search warrants.

k.      On or about April 14, SOUDANI paid, and ROSENWASSER accepted and deposited, a check in the amount of $5,000, with "Loan" written in the memo line.

l.      On or about May 6, 2023, SOUDANI texted ROSENWASSER: "Number one my phone is clean everything that was bad is turned off or completely completely taken out when i call you it's going to voicemail i have no other way to contact you except with text[.]"

m.     On or about May 9 and May 11, 2023, SOUDANI purchased in cash approximately 10 money orders from post offices in Montgomery, New York, and Plattekill, New York, totaling approximately $10,000, and gave those money orders to ROSENWASSER.

n.      On or about May 10 and May 12, 2023, ROSENWASSER presented evidence to the grand jury, including testimony from SOUDANI, and sought and obtained an Indictment against Individual-2.

o.      On or about May 15 and May 24, 2023, ROSENWASSER deposited at least approximately five money orders he had accepted from SOUDANI, totaling approximately $5,000, and caused the remaining five money orders, totaling approximately $5,000, to be paid to a law firm "from" ROSENWASSER.

p.      In or about April and May 2023, ROSENWASSER misrepresented and lied about his relationship with SOUDANI to the senior leadership of the District Attorney's Office and to Individual-1's Counsel, falsely denied that he had a conflict of interest in the Criminal Case, improperly declined to recuse himself from the Criminal Case, and failed to disclose his decades-long relationship with SOUDANI, his inappropriate communications with SOUDANI, and his acceptances of payments from SOUDANI.

q.    On or about September 13, 2023, SOUDANI paid ROSENWASSER a check in the amount of $3,100, dated September 13, 2023, with a blank memo line, which ROSENWASSER accepted and deposited on or about September 14, 2023.

r.    On or about January 5, 2024, SOUDANI accepted a check from the District Attorney's Office as restitution and in the amount of approximately $478,286.42, and on or about January 8, 2024, SOUDANI paid ROSENWASSER a check in the amount of $15,000, dated January 8, 2024, with the word "Loan" written in the memo line, which ROSENWASSER accepted and deposited on or about January 9, 2024.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Bribery)
### (As to STEWART ROSENWASSER)

The Grand Jury further charges:

67.    The allegations contained in paragraphs 1 through 61 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

68.    From at least in or about October 2022 through at least in or about May 2024, in the Southern District of New York and elsewhere, STEWART ROSENWASSER, the defendant, being an agent of a local government, and an agency thereof, to wit, the District Attorney's Office, which received, in each of the calendar years 2022 through 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the District Attorney's Office involving a thing of value of $5,000 and more, to wit, ROSENWASSER, while

employed as an Executive Assistant District Attorney of the District Attorney's Office and Chief

Counsel to the District Attorney, accepted and agreed to accept payments from MOUT'Z

SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, totaling at least

approximately $63,000, in exchange for, among other things, investigating and prosecuting the

Individuals, providing confidential information about the investigation to SOUDANI, and seizing

money that was then paid to SOUDANI as restitution.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

**COUNT THREE**
**(Bribery)**
**(As to MOUT'Z SOUDANI)**

The Grand Jury further charges:

69.    The allegations contained in paragraphs 1 through 61 of this Indictment are

repeated, realleged, and incorporated as if fully set forth herein.

70.    From at least in or about October 2022 through at least in or about May 2024, in

the Southern District of New York and elsewhere, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a

"Martin," a/k/a "Senior," the defendant, corruptly gave, offered, and agreed to give a thing of value

to a person, with intent to influence and reward an agent of a local government, and an agency

thereof, to wit, the District Attorney's Office, which received, in each of the calendar years 2022

through 2024, benefits in excess of $10,000 under a federal program involving a grant, contract,

subsidy, loan, guarantee, insurance, and other form of federal assistance, in connection with a

business, transaction, and series of transactions of the District Attorney's Office involving a thing

of value of $5,000 and more, to wit, SOUDANI paid STEWART ROSENWASSER, the

defendant, who was the Executive Assistant District Attorney of the District Attorney's Office and

Chief Counsel to the District Attorney, at least approximately $63,000, in exchange for, among

other things, ROSENWASSER investigating and prosecuting the Individuals, providing confidential information about the investigation, and seizing money that was then paid to SOUDANI as restitution,.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

**COUNT FOUR**
**(Conspiracy to Commit Honest Services Fraud)**
**(As to STEWART ROSENWASSER and MOUT'Z SOUDANI)**

The Grand Jury further charges:

71.    The allegations contained in paragraphs 1 through 61 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

72.    From at least in or about October 2022, through at least in or about June 2024, in the Southern District of New York and elsewhere, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

73.    It was a part and an object of the conspiracy that STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and to deprive the District Attorney's Office and the public of their intangible right to the honest services of ROSENWASSER, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit,

ROSENWASSER and SOUDANI agreed to participate in a scheme in which SOUDANI made bribe payments to ROSENWASSER in exchange for ROSENWASSER, as Chief Counsel to the District Attorney and Executive Assistant District Attorney of the District Attorney's Office, investigating and prosecuting the Individuals, providing confidential information about the investigation to SOUDANI, and seizing money that would be paid to SOUDANI as restitution, among other things, and sent and received, and caused others to send and receive, text messages, emails, and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

## COUNT FIVE
### (Honest Services Wire Fraud)
### (As to STEWART ROSENWASSER and MOUT'Z SOUDANI)

The Grand Jury further charges:

74.    The allegations contained in paragraphs 1 through 61 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

75.    From at least in or about October 2022 through at least in or about May 2024, in the Southern District of New York and elsewhere, STEWART ROSENWASSER and MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to the honest services of ROSENWASSER, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, ROSENWASSER and SOUDANI participated in a scheme in which SOUDANI made bribe payments to ROSENWASSER, in exchange for ROSENWASSER, as

Chief Counsel to the District Attorney and Executive Assistant District Attorney of the District Attorney's Office, investigating and prosecuting the Individuals, providing confidential information about the investigation to SOUDANI, and seizing money that would be paid to SOUDANI as restitution, among other things, and sent and received, and caused others to send and receive, text messages, emails, and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

### COUNT SIX
### (Extortion Under Color of Official Right)
### (As to STEWART ROSENWASSER)

The Grand Jury further charges:

76.    The allegations contained in paragraphs 1 through 61 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

77.    From at least in or about October 2022 through at least in or about May 2024, in the Southern District of New York and elsewhere, STEWART ROSENWASSER, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, ROSENWASSER, while serving as Chief Counsel to the District Attorney and Executive Assistant District Attorney of the District Attorney's Office, obtained things of value, including checks, money orders, cash, and purported "loans" from MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, with SOUDANI's consent, that was not due to ROSENWASSER or the District Attorney's Office in exchange for ROSENWASSER's agreement to, among other things, investigate and prosecute the

Individuals, provide confidential information about the investigation, and seize money that would be paid to SOUDANI as restitution.

(Title 18, United States Code, Section 1951.)

## COUNT SEVEN
### (False Statements)
### (As to STEWART ROSENWASSER)

The Grand Jury further charges:

78. The allegations contained in paragraphs 1 through 61 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

79. On or about June 18, 2024, in the Southern District of New York and elsewhere, STEWART ROSENWASSER, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, to wit, during an interview with the Federal Bureau of Investigation, ROSENWASSER falsely stated, in sum and substance, that the District Attorney and Senior Executive-1 of the District Attorney's Office were aware that ROSENWASSER knew Individual-1, and that they indicated it would be beneficial for the case for ROSENWASSER to travel to Colorado for the execution of arrest and search warrants so that Individual-1 would see "a familiar face" and potentially participate in an interview, when, in truth and in fact, neither the District Attorney nor Senior Executive-1 were aware of ROSENWASSER's relationship with Individual-1 prior to his travel to Colorado because ROSENWASSER had failed to disclose the relationship, and neither the District Attorney nor Senior Executive-1 told ROSENWASSER that it would benefit the case for ROSENWASSER to participate in the execution of arrest and search warrants due to his personal knowledge of Individual-1.

(Title 18, United States Code, Section 1001(a)(2).)

## COUNT EIGHT
### (Interstate Threats)
### (As to MOUT'Z SOUDANI)

The Grand Jury further charges:

80.    The allegations contained in paragraphs 1 through 61 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

81.    On or about April 16, 2023, in the Southern District of New York and elsewhere, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, transmitted in interstate and foreign commerce a communication containing a threat to injure the person of another, to wit, SOUDANI sent Soudani Threats-4 by interstate text message, threatening Individual-1 by stating, among other things: "swear to God I wanna fucking choke you with my own hands you deserve a fucking beating like you never had before . . . . the more you fuck with me, the more I will destroy your son completely I fucking hate you. . . . Motherfucker, I swear to you I'm a going to get you and him one way, or another it's a promise."

(Title 18, United States Code, Sections 875(c) and 2.)

## FORFEITURE ALLEGATIONS

82.    As a result of committing the offenses charged in Counts One, Two, Four, Five and Six of this Indictment, STEWART ROSENWASSER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

83.     As a result of committing the offenses charged in Counts One, Three, Four and Five

of this Indictment, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the

defendant, shall forfeit to the United States, pursuant to Title 18, United States Code,

Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and

personal, that constitutes or is derived from proceeds traceable to the commission of said offenses,

including but not limited to a sum of money in United States currency representing the amount of

proceeds traceable to the commission of said offenses that the defendant personally obtained.

<u>Substitute Assets Provision</u>

84.     If any of the above-described forfeitable property, as a result of any act or omission

by the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without
        difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code Section 2461, to seek forfeiture of any other property of the

defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)



_____
FOREPERSON

_Damian Williams_
DAMIAN WILLIAMS
United States Attorney